**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

---

DEANDRE LAJUAN MOORE, #625475,

Petitioner,

v. Case No. 16-10656

CATHERINE BAUMAN,

Respondent.
__________________________________/

**OPINION AND ORDER DENYING THE PETITION FOR A WRIT OF HABEAS CORPUS, DENYING A CERTIFICATE OF APPEALABILITY, AND DENYING LEAVE TO PROCEED ON APPEAL IN FORMA PAUPERIS**

Michigan prisoner Deandre Lajuan Moore ("Petitioner") has filed a pro se petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner was convicted of first-degree felony murder, Mich. Comp. Laws § 750.316(1)(b), and arson of a dwelling house, Mich. Comp. Laws § 750.72, following a jury trial with co-defendant Keith Laron Durr in the Wayne County Circuit Court. He was sentenced to concurrent terms of life imprisonment without the possibility of parole and 13 to 25 years imprisonment on those convictions. In his pleadings, Petitioner raises claims concerning the sufficiency of the evidence to support his convictions and the trial court's jury instructions. For the reasons that follow, the court denies with prejudice the habeas petition. The court also denies a certificate of appealability and denies leave to proceed in forma pauperis on appeal.

## I. BACKGROUND

Petitioner's convictions arise from an arson fire at the home of his co-defendant's

ex-girlfriend, which caused the death of a two-year-old boy, in Detroit, Michigan in July, 2010. The Michigan Court of Appeals described the relevant facts, which are presumed correct on habeas review, *see* 28 U.S.C. § 2254(e)(1); *Wagner v. Smith*, 581 F.3d 410, 413 (6th Cir. 2009), as follows:

> Defendants' convictions arise from a dispute between Durr and his ex-girlfriend, Loretta Smith (Smith). The couple ended their relationship in 2009, but encountered each other at a block party on July 10, 2010. The testimony by witnesses at the party varied regarding the number and timing of encounters between the two. However, following one physical encounter, Durr threatened to kill Smith; one witness heard Durr threaten to burn Smith's home down. Durr left the party with Moore. Shortly after the defendants' departure, Smith left the party and returned to her home to find it on fire. A two-year-old child in the home died from smoke inhalation. Detroit fire investigators labeled the cause of the fire as "undetermined."
>
> A witness, Heather Warddell (Warddell), who was then the girlfriend of Durr's friend, Michael Branden Ayers–Ellis (Branden), testified that after Moore and Durr left the party, she and Branden followed them in her own car, with Branden driving. Defendants proceeded to a gas station, exited carrying a metal can of lighter fluid, and drove to the side street near Smith's home. They entered the alley near Smith's home with the lighter fluid, but she could not recall which defendant carried the fluid out of the gas station or into the alley. She fought with Branden to prevent him from proceeding into the alley with defendants. Three neighbors corroborated Warddell's testimony regarding the presence of men in the alley, and one of those neighbors identified Durr as one of the men in the alley. Shortly after defendants left the alley, witnesses saw smoke coming from Smith's home. Smith's daughter, Jessica Smith (Jessica), who was at the home babysitting the two-year-old victim and a four-year-old child, NT, testified that she was unable to rescue the victim from the smoke and fire. Other witnesses testified that Jessica was outside with NT, walking and talking on her phone, before the fire started. After learning of the death of the victim, Warddell spoke with Durr, who made statements to her to the effect that she should keep her mouth shut and that he had "a crazy family." She interpreted these statements as threats. The following day, after learning that a child had been killed in the fire, Warddell and Branden left the area for several months, because Branden felt that "his name was probably in the streets" as being involved with the fire. Despite alleging that they were falsely accused and challenging the credibility of Warddell's testimony, defendants were convicted as charged.

*People v. Moore*, No. 313565, 2014 WL 4087921, *1 (Mich. Ct. App. Aug. 19, 2014).

Following his convictions and sentencing, Petitioner filed an appeal of right with the Michigan Court of Appeals raising the claims presented on habeas review. The court denied relief on those claims and affirmed his convictions. *Id.* at *2-6. Petitioner then filed an application for leave to appeal with the Michigan Supreme Court, which was denied in a standard order. *People v. Moore*, 497 Mich. 983, 861 N.W.2d 39 (2015).

Petitioner thereafter filed his federal habeas petition. He raises the following claims as grounds for relief:

> I. The evidence was not legally sufficient to prove beyond a reasonable doubt that he aided and abetted the arson and ultimately the murder of the victim, rendering the felony murder and arson convictions constitutionally defective and necessitating reversal under the due process guarantees of the 14th Amendment and Const. 1963, Art. I § 17, and the trial court's denial of a motion for directed verdict was an abuse of discretion.
>
> II. He was denied his constitutional rights to a fair trial, properly instructed jury, and the right to present a defense under the 6th and 14th Amendments and Const. 1963, Art. 1, §§ 17 and 20 where the trial court refused to give a requested and supported instruction.

Respondent has filed an answer to the petition contending that it should be denied for lack of merit.

## II. STANDARD

The provisions of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), codified at 28 U.S.C. § 2241 *et seq.*, govern this case because Petitioner filed his habeas petition after the AEDPA's effective date. *Lindh v. Murphy*, 521 U.S. 320, 336 (1997). The AEDPA provides:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d) (1996).

"A state court's decision is 'contrary to' . . . clearly established law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [that] precedent.'" *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003) (*per curiam*) (quoting *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000)); *see also Bell v. Cone*, 535 U.S. 685, 694 (2002).

"[T]he 'unreasonable application' prong of § 2254(d)(1) permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court but unreasonably applies that principle to the facts of petitioner's case." *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (quoting *Williams*, 529 U.S. at 413); *see also Bell*, 535 U.S. at 694. However, "[i]n order for a federal court find a state court's application of [Supreme Court] precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous. The state court's application must have been 'objectively unreasonable.'" *Wiggins*, 539 U.S. at 520-21 (citations omitted); *see also Williams*, 529 U.S. at 409. "AEDPA thus imposes a 'highly deferential standard for evaluating state-court rulings,' and 'demands that

state-court decisions be given the benefit of the doubt.'" *Renico v. Lett*, 559 U.S. 766, 773 (2010) (quoting *Lindh*, 521 U.S. at 333, n. 7; *Woodford v. Viscotti*, 537 U.S. 19, 24 (2002) (*per curiam*)).

A state court's determination that a claim lacks merit "precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). The Supreme Court has emphasized "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id*. (citing *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003)). Pursuant to § 2254(d), "a habeas court must determine what arguments or theories supported or . . . could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision" of the Supreme Court. *Id*. Thus, in order to obtain habeas relief in federal court, a state prisoner must show that the state court's rejection of his claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.*; *see also White v. Woodall*, _ U.S. _, 134 S. Ct. 1697, 1702 (2014). Federal judges "are required to afford state courts due respect by overturning their decisions only when there could be no reasonable dispute that they were wrong." *Woods v. Donald*, _ U.S. _, 135 S. Ct. 1372, 1376 (2015). A habeas petitioner cannot prevail as long as it is within the "realm of possibility" that fairminded jurists could find the state court decision to be reasonable. *Woods v. Etherton*, _ U.S. _, 136 S. Ct. 1149, 1152 (2016).

Section 2254(d)(1) limits a federal habeas court's review to a determination of whether the state court's decision comports with clearly established federal law as determined by the Supreme Court at the time the state court renders its decision. *Williams*, 529 U.S. at 412; *see also Knowles v. Mirzayance*, 556 U.S. 111, 122 (2009) (noting that the Supreme Court "has held on numerous occasions that it is not 'an unreasonable application of clearly established Federal law' for a state court to decline to apply a specific legal rule that has not been squarely established by this Court") (quoting *Wright v. Van Patten*, 552 U.S. 120, 125-26 (2008) (per curiam)); *Lockyer*, 538 U.S. at 71-72. Section 2254(d) "does not require a state court to give reasons before its decision can be deemed to have been 'adjudicated on the merits.'" *Harrington*, 562 U.S. at 100. Furthermore, it "does not require citation of [Supreme Court] cases–indeed, it does not even require awareness of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early v. Packer*, 537 U.S. 3, 8 (2002); *see also Mitchell*, 540 U.S. at 16.

The requirements of clearly established law are to be determined solely by Supreme Court precedent. Thus, "circuit precedent does not constitute 'clearly established Federal law as determined by the Supreme Court'" and it cannot provide the basis for federal habeas relief. *Parker v. Matthews*, 567 U.S. 37, 48-49 (2012) (*per curiam*); *see also Lopez v. Smith*, _ U.S. _ 135 S. Ct. 1, 2 (2014) (*per curiam*). The decisions of lower federal courts, however, may be useful in assessing the reasonableness of the state court's resolution of an issue. *Stewart v. Erwin*, 503 F.3d 488, 493 (6th Cir. 2007) (citing *Williams v. Bowersox*, 340 F.3d 667, 671 (8th Cir. 2003)); *Dickens v. Jones*, 203 F. Supp. 354, 359 (E.D. Mich. 2002).

A state court's factual determinations are presumed correct on federal habeas review. *See* 28 U.S.C. § 2254(e)(1). A petitioner may rebut this presumption with clear and convincing evidence. *Warren v. Smith*, 161 F.3d 358, 360-61 (6th Cir. 1998). Lastly, habeas review is "limited to the record that was before the state court." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).

## III. DISCUSSION

### A. Sufficiency of the Evidence Claim

Petitioner first asserts that he is entitled to habeas relief because the prosecutor failed to present sufficient evidence that he acted as an aider and abettor to support his convictions for arson of a dwelling house and first-degree felony murder and the trial court erred in denying his motion for a directed verdict.

The Due Process Clause "protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship*, 397 U.S. 358, 364 (1970). The question on a sufficiency of the evidence claim is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). The *Jackson* standard must be applied "with explicit reference to the substantive elements of the criminal offense as defined by state law." *Brown v. Palmer*, 441 F.3d 347, 351 (6th Cir. 2006) (quoting *Jackson*, 443 U.S. at 324 n. 16).

A federal habeas court views this standard through the framework of 28 U.S.C. § 2254(d). *Martin v. Mitchell*, 280 F.3d 594, 617 (6th Cir. 2002). Thus, under the AEDPA, challenges to the sufficiency of the evidence "must survive two layers of

deference to groups who might view facts differently" than a reviewing court on habeas review–the factfinder at trial and the state court on appellate review–as long as those determinations are reasonable. *Brown v. Konteh*, 567 F.3d 191, 205 (6th Cir. 2009). "[I]t is the responsibility of the jury–not the court–to decide what conclusions should be drawn from the evidence admitted at trial." *Cavazos v. Smith*, 565 U.S. 1, 2 (2011) (*per curiam*). "A reviewing court does not re-weigh the evidence or re-determine the credibility of the witnesses whose demeanor has been observed by the trial court." *Matthews v. Abramajtys*, 319 F.3d 780, 788 (6th Cir. 2003) (citing *Marshall v. Lonberger*, 459 U.S. 422, 434 (1983)). Accordingly, the "mere existence of sufficient evidence to convict . . . defeats a petitioner's claim." *Matthews*, 319 F.3d at 788-89.

Under Michigan law, a person who commits murder during the perpetration of a felony is guilty of first-degree murder. Mich. Comp. Laws § 750.316. The elements of felony murder are: (1) the killing of a human being; (2) with the intent to kill, to do great bodily harm, or to create a very high risk of death or great bodily harm with knowledge that death or great bodily harm was the probable result [*i.e.*, malice]; (3) while committing, attempting to commit, or assisting in the commission of any of the felonies specifically enumerated in the statute. *See Matthews*, 319 F.3d at 789 (citing *People v. Carines*, 460 Mich. 750, 759, 597 N.W.2d 130 (1999)). The facts and circumstances of the killing may give rise to an inference of malice, including evidence that the defendant used a deadly weapon. *Id*.

The elements of the underlying felony of arson of a dwelling house are: (1) the defendant willfully and maliciously burned a dwelling house; and (2) the defendant intended to burn the dwelling house, or intentionally committed an act that created a

very high risk of burning the house, and the defendant knew of that risk and disregarded it. *People v. Dolittle*, Nos. 298235, 298236, 2011 WL 4424351, *1 (Mich. Ct. App. Sept. 22, 2011) (citing statute and *People v. Barber*, 255 Mich. App. 288, 294-95, 659 N.W.2d 674 (2003)); Mich. Comp. Laws § 750.72.

To convict a defendant under an aiding and abetting theory, the prosecution must establish that the crime was committed by the defendant or some other person, that the defendant performed acts or gave encouragement that aided or assisted in the commission of the crime, and that the defendant either intended to commit the crime or knew that the principal intended to commit the crime at the time he or she gave the aid or encouragement. *Carines*, 460 Mich. at 757-58; *People v. Moore*, 470 Mich. 56, 679 N.W.2d 41, 49 (2004); Mich Comp. Laws § 767.39. An aider and abettor's state of mind may be inferred from all the facts and circumstances, including a close association between the defendant and the principal, the defendant's participation in the planning or execution of the crime, and evidence of flight after the crime. *Carines*, 460 Mich. at 757-58. Under an aiding and abetting theory, a defendant is liable for the crimes that he or she intends to aid and abet, or has knowledge of, as well as those crimes that are the natural and probable consequences of the crime he or she intends to aid or abet. *People v. Robinson*, 475 Mich. 1, 15, 715 N.W.2d 22 (2006). An aider and abettor to felony murder must have the requisite malice to be convicted of felony murder, but need not have the same malice as the principal. *Id.* at 14.

The prosecution must prove every element of a charged offense beyond a reasonable doubt. This burden includes proving that the defendant is the person who committed the crime. *People v. Oliphant*, 399 Mich. 472, 489, 250 N.W.2d 443 (1976);

*People v. Kern*, 6 Mich. App. 406, 409, 149 N.W.2d 216 (1967). Direct or circumstantial evidence and reasonable inferences arising from that evidence may constitute satisfactory proof of the elements of an offense, *People v. Nowack*, 462 Mich. 392, 399-400, 614 N.W.2d 78 (2000); *People v. Jolly*, 442 Mich. 458, 466, 502 N.W.2d 177 (1993); *see also People v. Johnson*, 146 Mich. App. 429, 434, 381 N.W.2d 740 (1985), including identity, *Kern*, 6 Mich. App. at 409-10, and intent or state of mind. *People v. Dumas*, 454 Mich. 390, 398, 563 N.W.2d 31 (1997).

Applying the foregoing standards, the Michigan Court of Appeals denied relief on this claim concluding that the prosecution presented sufficient evidence to support Petitioner's convictions for arson of a dwelling house and felony murder as an aider and abettor. *Moore*, 2014 WL 4087921 at *2-5. The court explained in relevant part:

> Viewing the evidence in a light most favorable to the prosecution, there was sufficient circumstantial evidence and reasonable inferences arising from the evidence to convict Moore of arson of a dwelling house premised on an aiding and abetting theory. Warddell, Chantey Anderson, Smith, and Taimisha Butler all testified that they attended a block party, during which Durr was present and continually tried to engage and curse at Smith. These incidents had to be broken up by attendees at the block party. Moore also attended this party. At one point, Durr made threats to kill and burn Smith's home. Shortly thereafter, according to Warddell, Durr left the party with Moore. Warddell and Branden followed the two defendants to a gas station, and saw defendants come out of the station with a metal can of lighter fluid, although it was unclear who carried the fluid. From that location, the two defendants proceeded to the alley near Smith's home.
>
> The three men got out of the cars, but Warddell's pleas to Branden to stay at the car resulted in a fight between Warddell and Branden, so only the two defendants proceeded into the alley with the lighter fluid. A short time later, the two defendants ran back from the alley. According to eyewitnesses, a man instructed Durr that they had to hurry, and defendants were purportedly laughing as they came from the alley. A neighbor identified Durr as one of the two men in the alley, and another neighbor corroborated much of Warddell's testimony regarding the presence of two vehicles at the scene, including her car, a fight between

> Warddell and Branden, two men entering the alley, the men leaving the alley, and a fire occurring a short time later.
>
> Although an accelerant could not be detected and the cause of the fire could not be determined, a cap to a lighter fluid container was found on the deck of the home. Moore contends that the plastic cap could not have originated from a metal can of fluid, but provided no evidence in support of this contention at trial. Furthermore, fire investigators acknowledged that fire suppression activities, such as water hoses, removal of the home's contents, and accelerant burn, may prevent the discovery of an accelerant in a particular fire. The fact that fire investigators were unable to detect an accelerant or classify the fire did not preclude the jury from determining that the fire was intentionally started.
>
> The circumstantial evidence was sufficient for the trier of fact to convict Moore of arson for the intentional burning of Smith's home. The evidence of the altercations between Durr and Smith at the block party, that Durr and Moore left the block party together and proceeded to a gas station where they purchased lighter fluid, that the two defendants then proceeded to an alley next to Smith's house, that they entered the alley together with the lighter fluid in tow and emerged from the alley together, that one of the men remarked that they had to hurry as they were leaving the alley, that the fire was discovered shortly after the two defendants left the alley, and that a cap to a lighter fluid container was found on the deck of Smith's home, viewed in a light most favorable to the prosecution, was sufficient to enable the jury to find beyond a reasonable doubt that the fire was intentionally set and that Moore either started the fire or aided and abetted Durr in doing so.
>
> Furthermore, there was also sufficient evidence to support the felony-murder conviction. A defendant is responsible for the crime he intends to aid and abet as well as the natural and probable consequences of that crime. *Robinson*, 475 Mich. at 14-15. The natural and probable consequences of lighting a fire of a dwelling home at night is that occupants of the home may not be able to perceive or wake up from the fire and perish either from the fire or smoke inhalation. There was sufficient evidence that Moore acted with wanton and willful disregard. *Kelly*, 423 Mich. at 278-279

*Id*. at *4-5.

The state court's decision is neither contrary to Supreme Court precedent nor an unreasonable application of federal law or the facts. First, the prosecution

presented sufficient evidence to support Petitioner's arson of a dwelling house conviction. Several witnesses testified that co-defendant Durr had a dispute with his ex-girlfriend, Loretta Smith, at a party. Heather Wardell testified that Durr and Petitioner left the party together. Durr and Petitioner then went to a gas station, purchased lighter fluid, walked down an alley near Smith's house with the lighter fluid, came out of the alley laughing together, and promptly left the scene. A fire at Smith's house ensued. Fire investigators found a lighter fluid container cap on the porch of the house. Viewed in a light most favorable to the prosecution, such testimony was sufficient for the jury to find beyond a reasonable doubt that the fire was intentionally set and that Petitioner either started the fire or aided and abetted Durr in starting the fire so as to support Petitioner's arson of a dwelling house conviction.

Second, the prosecution presented sufficient evidence to support Petitioner's felony murder conviction. The testimony showed that the house fire was intentionally set during the night by Petitioner or by Durr with Petitioner's assistance and that a two-year old boy who was in the house at the time of the fire died from smoke inhalation. Someone who intentionally starts a house fire at night creates a very high risk of death or great bodily harm with knowledge that death or great bodily harm is the probable result. In other words, the natural and probable consequence of igniting a fire in an occupied house, particularly at night, is that people in the house may be asleep and unaware of the fire, may not be able to wake up or otherwise discover the fire in timely manner, may be trapped or unable to quickly and easily escape the fire, and may die or suffer serious bodily harm from either the fire itself or from smoke inhalation. Viewed in a light favorable to the prosecution, the testimony presented at trial was

sufficient for the jury to find beyond a reasonable doubt that Petitioner had the requisite intent to support his felony murder conviction.

Petitioner challenges the jury's credibility determinations and the inferences that the jury drew from the evidence at trial. However, it is the job of the fact-finder at trial, not a federal habeas court, to resolve such evidentiary conflicts. *Jackson*, 443 U.S. at 326; *Martin v. Mitchell*, 280 F.3d 594, 618 (6th Cir. 2002); *Walker v. Engle*, 703 F.2d 959, 969-70 (6th Cir. 1983) ("A federal habeas corpus court faced with a record of historical facts that supports conflicting inferences must presume–even if it does not affirmatively appear in the record–that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution."). The trial court's verdict, and the Michigan Court of Appeals' decision affirming that verdict, were reasonable. The evidence at trial, viewed in a light favorable to the prosecution, established beyond a reasonable doubt that Petitioner, acting as a principal or as an aider and abettor, committed the crimes of arson of a dwelling house and felony murder.

Lastly, to the extent that Petitioner asserts that the trial court erred in denying his directed verdict motion under state law, he fails to state a claim upon which habeas relief may be granted. *See, e.g., King v. Trippett*, 27 F. App'x 506, 510 (6th Cir. 2001) (upholding district court's ruling that petitioner failed to state a habeas claim where he alleged that trial court erred in denying directed verdict motion on armed robbery charge). State courts are the final arbiters of state law and federal courts will not intervene in such matters. *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990); *see also Bradshaw v. Richey*, 546 U.S. 74, 76 (2005); *Sanford v. Yukins*, 288 F.3d 855, 860 (6th Cir. 2002). Habeas relief does not lie for perceived errors of state law. *See Estelle*

*v. McGuire*, 502 U.S. 62, 67-68 (1991) ("it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions"). Habeas relief is not warranted on this claim.

**B. Jury Instruction Claim**

Petitioner also asserts that he is entitled to habeas relief because the trial court refused to give the jury a modified flight instruction concerning Heather Warddell's and Michael Branden's flight from the area following the incident. He alleges that the lack of such an instruction deprived him of due process and the right to present a defense.

In order for habeas relief to be warranted on the basis of incorrect jury instructions, a habeas petitioner must show more than that the jury instructions are undesirable, erroneous or universally condemned. Rather, taken as a whole, they must be so infirm that they rendered the entire trial fundamentally unfair. *Estelle*, 502 U.S. at 72; *Henderson v. Kibbe*, 431 U.S. 145, 154 (1977). A jury instruction is not to be judged in artificial isolation, but must be considered in the context of the instructions as a whole and the trial record. *Jones v. United States*, 527 U.S. 373, 391 (1999); *Grant v. Rivers*, 920 F. Supp. 769, 784 (E.D. Mich. 1996). The failure to give an instruction that is supported by the evidence does not automatically justify habeas relief–the failure to instruct must have rendered the trial fundamentally unfair. *Cupp v. Naughten*, 414 U.S. 141, 147 (1973); *Daniels v. Lafler*, 501 F.3d 735, 741 (6th Cir. 2007). "An omission, or an incomplete instruction, is less likely to be prejudicial than a misstatement of the law." *Henderson*, 431 U.S. at 155. State law instructional errors rarely form the basis for federal habeas relief. *Estelle*, 502 U.S. at 71-72.

The right of an accused to present a defense has long been recognized as "a

fundamental element of due process." *Washington v. Texas*, 388 U.S. 14, 19 (1967); *see also Holmes v. South Carolina*, 547 U.S. 319, 329-31 (2006); *Chambers v. Mississippi*, 410 U.S. 284, 302 (1973). A defendant's right to present a defense is not unlimited, however, and may be subject to "reasonable restrictions." *United States v. Scheffer*, 523 U.S. 303, 308 (1998). For example, a defendant "does not have an unfettered right to offer evidence that is incompetent, privileged, or otherwise inadmissable under standard rules of evidence." *Montana v. Egelhoff*, 518 U.S. 37, 42 (1996) (quoting *Taylor v. Illinois*, 484 U.S. 400, 410 (1988)); *see also Holmes*, 547 U.S. at 326 (recognizing that "well-established rules of evidence permit trial judges to exclude evidence if its probative value is outweighed by certain other factors such as unfair prejudice, confusion of the issues, or potential to mislead the jury"). In such cases, the question is not whether the jury would reach a different result, but whether the defendant was afforded "a meaningful opportunity to present a complete defense." *Crane v. Kentucky*, 476 U.S. 683, 690 (1986) (quoting *California v. Trombetta*, 467 U.S. 479, 485 (1984)); *Chambers*, 410 U.S. at 302.

The Michigan Court of Appeals denied relief on this claim finding that the jury instruction was not warranted under state law, that the jury was sufficiently instructed on witness credibility, and that defense counsel was able to cross-examine Wardell about her flight from the area. The court explained in relevant part:

> Evidence of flight may be probative of consciousness of guilt. *People v. Coleman*, 210 Mich App 1, 4; 532 NW2d 885 (1995). Flight includes actions such as "fleeing the scene of the crime, leaving the jurisdiction, running from the police, resisting arrest, and attempting to escape custody." *Id.* However, evidence of flight may also have an intention or purpose consistent with innocence as well as guilt, and the issue presents a question for resolution by the jury. *People v. MacCullough*, 281 Mich 15, 29–30; 274 NW 693 (1937).

The standard jury instruction governing flight, CJI2d 4.4, provides:

> (1) There has been some evidence that the defendant [tried to run away/tried to hide/ran away/hid] after [the alleged crime/(he/she) was accused of the crime/the police arrested (him/her)/the police tried to arrest (him/her)].
>
> (2) This evidence does not prove guilt. A person may run or hide for innocent reasons, such as panic, mistake, or fear. However, a person may also run or hide because of a consciousness of guilt.
>
> (3) You must decide whether the evidence is true, and, if true, whether it shows that the defendant had a guilty state of mind.

Moore requested that the following modified instruction be presented to assist the jury in evaluating Warddell's departure from the area:

> (1). There has been evidence that one (or two) of the witnesses who has accused DeAndre Moore of wrong doing, has run away, tried to or did go under ground in Lansing, Michigan after being accused of perpetrating the crimes that they allege DeAndre Moore of doing.
>
> (2). A person may run away or hide because of consciousness of guilt.
>
> (3) You may decide that if true, that the witness (or witnesses), did try to run away or hide or go underground, weather [sic] it shows that he, she (or they) had a guilty state of mind them self, that motivated her, him or them to falsely shift blame and falsely accuse DeAndre Moore.

The standard instruction is generally invoked when there is evidence that the defendant tried to flee after being accused of the crime, or after an arrest or attempted arrest. *See Coleman*, 210 Mich App at 4; Moore presents the novel argument that because Warddell heard that the couple had been “accused” by “the streets,” a modified flight instruction was applicable. Moore fails to present authority in support of his argument that a flight instruction may be given related to testifying witnesses. Such failure could result in the abandonment of his claim. *People v. Huffman*, 266 Mich App 354, 371; 702 NW2d 621 (2005).

Further, Moore’s argument fails on the merits even if it had been properly presented. Moore’s argument is essentially that Warddell or Branden falsely accused him to absolve the couple of their own wrongdoing. Warddell and Branden’s flight from the area the following day was raised

> at trial; defense counsel cross-examined Warddell about her concerns that she or Branden would be blamed for the fire and her failure to go to the police at the time. The jury was instructed that it could consider "any bias, prejudice, or personal interest in how this case is decided" and a witness had "any special reason to lie" in determining witness credibility. We conclude that this instruction adequately protected Moore's rights, and the trial court did not abuse its discretion by declining to give Moore's modified instruction with regards to Warddell.[1] *Kowalski*, 489 Mich at 501–502; *Hartuniewicz*, 294 Mich App 237 at 242.

*Moore*, 2014 WL 4087921 at *5-6 (footnote in original).

The state court's decision is neither contrary to Supreme Court precedent nor an unreasonable application of federal law or the facts. First, to the extent that Petitioner challenges the state court's decision that the jury instruction was not warranted under state law, he fails to state a claim upon which habeas relief may be granted. As discussed *supra*, federal habeas relief is unavailable for perceived violations of state law. *Estelle*, 502 U.S. at 72. State courts are the final arbiters of state law and federal courts will not intervene in such matters. *Lewis*, 497 U.S. at 780; *see also Bradshaw*, 546 U.S. at 76; *Sanford*, 288 F.3d at 860.

Moreover, the trial court's refusal to instruct the jury about the flight of *witnesses* did not violate due process nor render the trial fundamentally unfair. The trial court properly instructed the jury on the elements of the charged offenses, the burden of proof, the evaluation of witness credibility, and other relevant matters. The requested instruction, that a *witness's* flight may be evidence of his or her guilt and evidence of motivation to falsely accuse the defendant, is not normally available under state law. Rather, the standard flight instruction concerns a *defendant's* flight and warns against

---

[1]Moore alleged that the flight instruction applied to both Warddell and Branden. However, Branden did not testify and was held in contempt. Therefore, any instruction related to his testimony would have been inapplicable.

a presumption of guilt while allowing the jury to find consciousness of guilt. Petitioner also cites no federal law which requires such an instruction. The jury instructions, as given, were sufficient to satisfy due process and the right to a fair trial.

The trial court's refusal to give the requested modified flight instruction also did not deprive Petitioner of his right to present a defense. Heather Warddell testified about her flight from the area after the incident. She stated that she and Michael Branden moved to Lansing, Michigan for several months and did not contact the police or fire investigators. (*See* Dkt. #12-8, Pg. ID 563-66.) She indicated that they left the area because co-defendant Durr made comments that made her scared for her safety and people on the streets were saying that Branden was involved in the incident. (*Id*., Pg. ID 561-64.) On cross examination, defense counsel challenged Wardell's credibility and version of events, and addressed the flight issue. (*Id.*, Pg. ID 611-18.) During closing arguments, defense counsel argued that Wardell and Branden were practically accomplices to the crime, that Wardell was shifting blame to Petitioner, and that Wardell's testimony could not be trusted because she was trying to save herself and Branden at Petitioner's expense. (*See* Dkt. #12-12, Pg. ID 1097-98.) The record thus indicates that Petitioner was able to present a defense. Petitioner fails to establish that the jury instructions, considered as a whole, violated his due process rights, rendered his trial fundamentally unfair, and/or deprived him of his right to present a defense. Habeas relief is not warranted on this claim.

## IV. CERTIFICATE OF APPEALABILITY

Before Petitioner may appeal the court's decision, a certificate of appealability

must issue. *See* 28 U.S.C. § 2253(c)(1)(a); Fed. R. App. P. 22(b). A certificate of appealability may issue only if the petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). When a court denies relief on the merits, the substantial showing threshold is met if the petitioner demonstrates that reasonable jurists would find the court's assessment of the constitutional claim debatable or wrong. *Slack v. McDaniel*, 529 U.S. 473, 484-85 (2000). "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). The court concludes that Petitioner fails to make a substantial showing of the denial of a constitutional right as to his habeas claims. Furthermore, leave to proceed in forma pauperis on appeal cannot be taken in good faith. *See* Fed. R. App. P. 24(a).

## V. CONCLUSION

IT IS ORDERED that Petitioner's Petition for Habeas Corpus (Dkt. #1) is DENIED with prejudice.

IT IS FURTHER ORDERED that a certificate of appealability is DENIED.

IT IS FURTHER ORDERED that leave to proceed in forma pauperis on appeal is DENIED.

s/Robert H. Cleland
ROBERT H. CLELAND
UNITED STATES DISTRICT JUDGE

Dated: July 31, 2017

I hereby certify that a copy of the foregoing document was mailed to counsel of record on this date, July 31, 2017, by electronic and/or ordinary mail.

s/Lisa Wagner
Case Manager and Deputy Clerk
(810) 292-6522

S:\Cleland\JUDGE'S DESK\C2 ORDERS\16.10656.MOORE.denyhabeas.ctb.bss.wpd